UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DAQUAVIAN MCKNIGHT**                                                                    **PLAINTIFF**

**v.**                                                                                    **No. 5:22-cv-154-BJB**

**OFFICER ALEXANDER CORTEZ, ET AL.**                                                      **DEFENDANTS**

\*\*\*\*\*

<u>**MEMORANDUM OPINION & ORDER**</u>

This case involves claims of retaliation and seizure during a traffic stop. The questions on summary judgment are whether the driver points to sufficient facts that would allow a jury to find that Hopkinsville Police Officers violated his civil rights when they barred him from using his smartphone during the stop, seized that phone, and ticketed him—and whether those rights were clearly established such that the officers should be held liable for any violations.

### A.  Undisputed Facts

According to video footage and the undisputed record, Officer Zachary Lamblin pulled over DaQuavian McKnight's car for an (admitted) seatbelt violation. Lamblin Deposition (DN 24-2) at 30:1–5; McKnight Deposition (DN 24-3) at 24:8–10. McKnight immediately told Lamblin he had a registered firearm, so Lamblin ordered McKnight and his passenger (girlfriend Zakia Osborne) out of the car. Lamblin Bodycam Footage (DN 21-4) at 0:42–1:04. Osborne began recording the encounter on her cellphone, *see* McKnight Dep. at 50:21–22; Lamblin Bodycam Footage at 0:57–2:09, Lamblin asked to search the car because he smelled marijuana, *id.* at 4:33–5:07, and McKnight acquiesced in the search, *id.* at 5:25–5:51.

As Lamblin searched the car, another officer—Alexander Cortez—arrived as backup. Cortez Bodycam Footage (DN 21-3) at 0:28–0:45. McKnight, who had just dropped off his son at daycare, was manipulating his smartphone—presumably to kill time—while Lamblin searched his car. McKnight Dep. at 10:23–11:1; Cortez Bodycam Footage (DN 21-3) at 0:27–0:33. Cortez asked McKnight to stop using his phone, expressing concern that McKnight would invite others to the scene. Cortez Bodycam Footage at 0:28–0:45. This upset McKnight, who asked Cortez whether and why he couldn't use his phone. Eventually McKnight stopped using the phone and set it on the hood of Lamblin's police car. Cortez Bodycam Footage at 0:34–1:30. After a few minutes, McKnight (growing more perturbed) picked up the phone and began using it again. *Id.* at 10:55. Although the record doesn't make clear what McKnight was doing on the phone at this point, all agree that he soon used it to livestream the stop on Facebook. *See id.* at 11:14–11:33. To halt McKnight's recording, Cortez

confiscated the cellphone. *See id.* at 11:33–17:38. Six minutes later, Lamblin finished the car search, which revealed no contraband. He issued a seatbelt citation to McKnight, and the officers gave McKnight's cellphone and gun back to him. Lamblin Bodycam Footage at 22:18–22:55. No one else showed up to watch or record the stop, which lasted approximately 22 minutes. Lamblin Dashcam Footage (DN 21-2) at 0:58–23:07.

### B. Claims

As foreshadowed during the recorded traffic stop, McKnight sued Cortez for violating his First and Fourth Amendment rights when he ordered McKnight to stop using his cellphone and then seized the phone. Complaint (DN 1) ¶¶ 38–48; Cortez Bodycam Footage at 4:59–5:50; 42 U.S.C. § 1983. McKnight also accused Officer Lamblin of retaliating against him in violation of the First Amendment when Lamblin issued him a traffic ticket instead of a warning. Complaint ¶¶ 30–37. And he sued the City of Hopkinsville and its then-Police Chief, Clayton Sumner, for deliberate indifference in failing to train and supervise Lamblin, Cortez, and other unnamed officers. ¶¶ 49–52. The Defendants didn't move to dismiss these claims under Rule 12(b)(6), but after discovery they and McKnight filed cross-motions for summary judgment.

The Defendants argue that undisputed facts establish that they didn't retaliate against McKnight, unlawfully seize his phone, or violate clearly establish law in any event. Defendants Motion for Summary Judgment (DN 25-1) at 1. The City and Police Chief, moreover, add that no facts in the record would allow a jury to conclude they failed to train or supervise these officers in violation of the Constitution. *Id.* at 22–25.

McKnight simultaneously seeks summary judgment on four grounds, all of which he says are supported by undisputed record evidence. McKnight Motion for Summary Judgment (DN 21-1). First, Cortez's order to stop recording and seizure of McKnight's phone amounted to retaliation for his exercise of First Amendment rights. *Id.* at 11–15. Second, Cortez's seizure of his phone violated the Fourth Amendment. *Id.* at 17–18. Third, Lamblin's displeasure with McKnight's speech led the officer to ticket him for a seatbelt violation that otherwise would've drawn only a warning. *Id.* at 15–16. Last, the City and Sumner "did nothing to ensure that [the officers] had proper training." *Id.* Separately, McKnight filed a motion to exclude expert testimony from the three named officers and two others—Officer Meeks and Chief Newby—on the ground that the three named Defendants plan to also testify as expert witnesses and all five will necessarily offer impermissible legal analysis. McKnight Motion to Exclude Experts (DN 22).

2

### C.     Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure requires that a court grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." No "genuine dispute" exists if a reasonable fact-finder could not accept the nonmoving party's version of the facts, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986), or if, even on the nonmoving party's version of the facts, the law would still require a judgment for the movant, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "To the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

Here, the facts are largely undisputed based on the videos that show McKnight's conversations with Lamblin and Cortez. But questions of fact remain open regarding Cortez's reasons for seizing McKnight's phone.

### D.     First Amendment Retaliation

McKnight argues that his questioning and criticism of Cortez and Lamblin caused them to ticket him and seize his phone in violation of his First Amendment rights to criticize and record the police.[1] McKnight MSJ at 11–15. To succeed on a First Amendment retaliation claim, McKnight must show that (1) he engaged in constitutionally protected speech or conduct; (2) the government took an adverse action against him; and (3) a causal connection exists between the speech and adverse action. *See Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021). As the Supreme Court has explained with respect to the second and third elements, "a First Amendment retaliation claim must show that the government took an adverse action in response to his speech that would not have been taken absent the retaliatory motive." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (cleaned up). To recover in the face of an immunity defense, moreover, McKnight must show both that the defendants violated his constitutional rights and that those rights were clearly established. *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). That requires him to produce "controlling authority" from either the Sixth Circuit or the Supreme Court "placing the statutory or constitutional question beyond debate."

---

[1] Although Cortez told McKnight that he couldn't use the phone at all (and later confiscated it outright), the First Amendment activity relevant to this claim is more limited. McKnight argues that Cortez's confiscation prevented him from using his phone to record the police and chilled him from continuing to orally criticize Cortez and Lamblin. He does not raise a distinct claim that Cortez prevented him from using the phone to communicate *at all*, which could implicate a different set of First Amendment concerns.

*Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021).

### 1. Officer Cortez

McKnight alleged that Cortez retaliated against him by prohibiting his recording and then seizing his cellphone. Complaint ¶¶ 43–48. At the outset, the parties dispute whether McKnight's Complaint adequately states a claim against Cortez for First Amendment retaliation.

***Preservation.*** Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." The touchstone of this requirement, the Supreme Court has explained, is notice: a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (cleaned up and quotation omitted). Rule 8's "liberal notice pleading" regime emphasizes "liberality rather than technicality." *Swierkiwicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017 (6th Cir. 2005) (quotation marks omitted). The question is simply whether the complaint contains "factual allegations" which, if true, demonstrate an entitlement to relief. *Twombly*, 550 U.S. at 555–56. A complaint need not "expressly plead legal theories"; it need only "plead factual allegations that impliedly establish[h] at least one viable theory." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021).

Although this case has reached the summary judgment stage, the Defendants (who didn't previously file a motion to dismiss) challenge the way he pled (or didn't plead) his First Amendment retaliation claim against Cortez. Count 1 of McKnight's Complaint is labeled "retaliation in violation of the First Amendment." Complaint ¶¶ 30–37. And, true enough, McKnight brought that specific claim against only "Defendant Lamblin, individually." But a closer look at the rest of the Complaint shows that it's more than sufficient to put Cortez on notice of the allegations McKnight raised against him. *See Twombly*, 550 U.S. 554–55. McKnight alleged that Cortez "ordered Mr. McKnight to turn off his phone" and directed him not to record the traffic stop. ¶ 19. He alleged that McKnight repeated his order to stay off the phone. ¶ 23. And he alleged that Cortez seized the phone and kept it for some non-trivial duration while the traffic stop concluded. ¶¶ 25–28. Later, McKnight's Complaint alleges that Cortez deprived him of the right "to speak or record police activity in violation of the First Amendment." ¶¶ 43–48. While the thrust of this count is that Cortez took McKnight's phone because McKnight was recording the encounter—a claim on which McKnight concedes Cortez is entitled to qualified immunity—McKnight also stated that Cortez's phone seizure "was likely to chill free speech and to deprive the public of the ability to evaluate police activity." ¶ 46. The Complaint concludes by stating the clearly established principle that "police may not retaliate against individuals based on their speech." ¶ 48.

These allegations satisfy Rule 8's liberal pleading standard. The Complaint states the protected activity McKnight was engaged in (criticizing Cortez and Lamblin), the source of that protection (the First Amendment), the individual who violated the right (Cortez), and what that individual did (took the cell phone). That's sufficient under Sixth Circuit precedent. The Complaint put Cortez on notice, with sufficient factual allegations, that his phone seizure violated McKnight's First Amendment rights. (All the more so considering McKnight's specific retaliation claim against Cortez's co-defendant.) McKnight didn't need to include anything else, much less each specific "theor[y]" of First-Amendment liability he intended to assert against Cortez. *Dibrell*, 984 F.3d at 1160. And any concern about notice to Cortez could've and likely should've been raised far sooner in this case—before or during discovery—so counsel could've addressed it efficiently and without prejudicing either side. In keeping with Rule 8's "liberal" preference for merits adjudication over "technica[l]" dismissals, the Court construes the Complaint—viewed in the light of the motions and discovery practice that followed—adequately put Cortez on notice of a retaliation claim against him. *Cf. Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009) (courts look to "the substance of a complaint's allegations," lest a 12(b)(6) motion reduce to a "formalistic search through the pages of the complaint" for precise terminology).

***Right to Record.*** McKnight's first claim ends where it begins. As he acknowledges, no binding authority has clearly established a First Amendment right to record. McKnight MSJ at 11 n.9. ("[B]ecause the right to record police was not clearly established in the Sixth Circuit … Defendant Cortez has qualified immunity" for this claim.). As one district court recently and plainly put it, "The United States Supreme Court and the Sixth Circuit"—the only authorities capable of clearly establishing the law in this jurisdiction[2]—"have yet to hold the public enjoys a First Amendment right to record police activities in public places." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 661 (S.D. Ohio 2023); *cf. Hils v. Davis*, 52 F.4th 997, 1001 (6th Cir. 2022) ("A prohibition on recording speech is not a prohibition on speaking."). The Court therefore grants summary judgment to Cortez, on qualified-immunity grounds, with respect to McKnight's right-to-record theory.

***Criticizing Police.*** McKnight's claim that Cortez unlawfully seized the phone in retaliation for his criticism of the police, by contrast, survives summary judgment.[3] As McKnight and Cortez have addressed that claim, the record leaves

---

[2] McKnight doesn't rely on the "robust consensus" or "obvious case" exceptions to this principle. *See District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018).

[3] May law-enforcement activity justified under the Fourth Amendment amount to an "adverse" action sufficient to support a First Amendment retaliation claim? The answer is not clear from the parties' briefing—and may well remain an open question within the Sixth Circuit. In a related context, the Supreme Court has disclaimed any right "to be free from a

two important, factual disputes: Cortez's motivation and the causal connection between speech and seizure.[4]

This leaves genuine and material factual issues regarding two of the three factors McKnight must prove to establish unconstitutional retaliation—"adverse action" that would chill a speaker of ordinary firmness, *Anders*, 984 F.3d at 1175, that Cortez wouldn't have undertaken that "'absent [a] retaliatory motive,'" *Wilson*, 595 U.S. at 477.

*First*, the summary-judgment record doesn't make clear whether the temporary deprivation of McKnight's phone would "deter a person of ordinary firmness from continuing" to criticize the police. *Holzemer*, 621 F.3d at 520. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Id.* (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)). It is also an "intensely context driven" inquiry, necessarily involving factual determinations that are often unfit for summary judgment. *Id.* at 524. That is the case here. On the one hand, the Defendants assert that Cortez's seizure reflects legal and, at worst, inconsequential injury. Defendants MSJ at 18–19. On the other hand, "the harassment necessary to rise to a level sufficient to deter an individual is not extreme." *Holzemer*, 621 F.3d at 524. The answer to this question will turn on the factfinder's assessment of the context, including the length of the deprivation, the manner in which Cortez seized the phone, and the degree to which he physically separated the phone from McKnight. *See id.* at 524–25.

*Second*, the parties disagree on Cortez's motivation for seizing McKnight's phone. Under Sixth Circuit precedent, "[i]t is not enough to show that an official acted with retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause." *Nieves v. Bartlett*, 587

---

retaliatory *arrest* that is otherwise supported by probable cause." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (emphasis added). So too with retaliatory *prosecution*. *See id.* at 666 (citing *Hartman v. Moore*, 547 U.S. 250 (2006)). And Sixth Circuit decisions appear to follow the converse of the *Reichle/Hartman* principle even beyond arrests and prosecutions. *See, e.g.*, *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019) ("An officer who seizes a person for Fourth Amendment purposes *without proper justification* and issues her a more severe ticket clearly commits an adverse action ….") (emphasis added); *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022) (Fourth Amendment seizure was an adverse action for retaliation claim when "there was *no probable cause*" to arrest the plaintiff) (emphasis added). The Court has elsewhere made clear, however, that police action may be lawful under the Fourth Amendment yet unlawful under other constitutional provisions. *See Whren v. United States*, 517 U.S. 806, 813 (1996). And here the parties hotly and reasonably contest whether Cortez's seizure was in fact lawfully justified by reasonable suspicion—so summary judgment wouldn't be appropriate.

[4] Cortez did not raise qualified immunity as a defense to this claim.

U.S. 391, 398–99 (2019). McKnight contends that his speech caused Cortez to seize his phone, *see* McKnight MSJ at 15 (noting Cortez didn't seize the phone of his girlfriend, even though she also recorded the encounter), whereas Cortez asserts that he temporarily took the phone because it posed a danger to the officers or to potential evidence during the search, *see* Defendants' MSJ at 18. Neither the parties' briefing nor the video footage confirms either of the two conflicting accounts. Both theories of causation are, on the current record as presented at summary judgment, factually plausible. And "[c]hoosing which inference to accept," of course, "is not the business of the Court, at least at the summary judgment stage." *Hazel v. Quinn*, 933 F. Supp. 2d 884, 889 (E.D. Mich. 2013) (citing *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1072 (6th Cir. 1999)). So the Court denies both parties' motions for summary judgment with respect to McKnight's claim that Cortez retaliated against him by seizing the phone.

### 2. **Officer Lamblin**

McKnight's claim that Lamblin retaliated against him by issuing him a citation instead of a warning, on the other hand, fails. Lamblin is entitled to summary judgment, either on qualified-immunity grounds or under Rule 56, because McKnight hasn't offered proof that Lamblin issued the ticket in violation of his First Amendment rights.[5]

McKnight's retaliation claim against Lamblin fails on prong three of the retaliation standard set out above: he hasn't shown that his speech was a but-for cause of Lamblin's decision to issue the ticket. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) ("but-for cause" means "the adverse action against the plaintiff would not have been taken absent the retaliatory motive"). McKnight hasn't pointed to any evidence in the record indicating that speech-related rather than legitimate law-enforcement reasons motivated Lamblin's decision to issue a citation. McKnight doesn't challenge Lamblin's reason for pulling him over: the officer spotted McKnight's vehicle and noticed that McKnight wasn't wearing his seat belt. Lamblin Dep. at 24:12–13. McKnight conceded as much. *See* McKnight Dep. at 24:8–10.

---

[5] Because Lamblin didn't violate McKnight's right to free speech, the Court need not weigh in on the parties' debate over the level of generality with which to define the right for purposes of the clearly established inquiry. *Compare* McKnight MSJ at 16 n.12 (defining the right as the "right to criticize police without suffering retaliation"), *with* Defendants MSJ at 9–10 (defining the right as the right to be free from an otherwise justified "retaliatory citation"); *see also MacIntosh*, 69 F.4th at 323–24 (Sutton, C.J., dissenting) ("*Reichle* teaches that the clearly established inquiry does not consist solely of the general right to be free from retaliation for one's speech. It must factor in the actual retaliatory adverse action: there, an arrest supported by probable cause; here, the display of a rifle during a virtual debate…."). Courts may address either of the qualified-immunity standard's two prongs first, and need not address the second if the first is dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Under Kentucky law, as Lamblin knew, *see* Lamblin Dep. at 24:18–19, police officers may stop and cite a driver if anyone in the target vehicle isn't wearing a seatbelt. KRS § 189.125(6). Lamblin knew Kentucky law authorized him to issue McKnight a ticket even before he heard McKnight say a word. And Lamblin testified that he ticketed McKnight in the interest of "enforcing safety" and "prevent[ing] [any] injury," consistent with his general practice of "giv[ing] citations to every person" he pulled over "for seat belt violations." Lamblin Dep. at 29:7–14; 30:20–23. McKnight has offered no evidence to rebut this account. And the video indicates (as discussed below) that most or all of McKnight's jawing with Cortez came after and apart from Lamblin's stop and McKnight's admissions. So the undisputed record indicates Lamblin's motivation to ticket McKnight stemmed from a violation of the traffic laws, not speech critical of law enforcement.

Despite this evidence, McKnight argues that Lamblin had the discretion to issue him a lesser sanction. *See* McKnight MSJ at 15–16; McKnight Opp. (DN 33) at 2–6. And, according to McKnight, Hopkinsville Police Department policy suggests that Lamblin should've exercised that discretion. As a matter of law enforcement, perhaps he should've; that's a question for decisionmakers outside the federal courts. As a matter of First Amendment retaliation, however, what matters is whether evidence indicates Lamblin issued the ticket because of McKnight's speech. And here no evidence shows that Lamblin decided to issue the ticket after (much less because of) hearing McKnight speak. McKnight's contention that his speech gave rise to the discretionary choice to ticket rather than warn is pure speculation.

The evidence instead indicates that Lamblin was paying little attention to what McKnight was saying. Lamblin Dep. at 46:2–9 (explaining that, for the first few minutes after Cortez's arrival, he "wasn't necessarily paying attention to the conversation"). True, Lamblin suggested that McKnight "use [his] Fifth Amendment right" to remain silent. *Id.* at 37:24–38:2. But anyone who's been to law school, worked as a cop, or watched TV understands that this sort of comment is offered to *protect* rather than muzzle citizens who face jeopardy during police encounters. And even if Lamblin issued the warning less out of concern for McKnight's rights and more out of a desire to simply shut him up, *see* McKnight Dep. at 35:6–36:3, this stray and utterly routine remark isn't enough to create a "genuine" dispute regarding Lamblin's motive. *See* Lamblin Dep. at 38:3–9; *Anderson*, 477 U.S. at 248 (a "genuine" dispute is one in which "a reasonable jury could return a verdict" for the nonmoving party).

### E. Seizure of McKnight's Phone During the Stop

McKnight next claims that Cortez seized his phone in violation of the Fourth Amendment. Complaint ¶¶ 40–42. To survive summary judgment, he must overcome Cortez's qualified-immunity defense and demonstrate that Cortez violated his clearly established right to possess the cell phone.

8

The Fourth Amendment protects individuals against unreasonable searches and seizures. McKnight challenges only the seizure of his phone, not the search of his car. During this encounter, McKnight enjoyed a clearly established "right to his personal property without interference from the police absent consent or reasonable suspicion … that a crime has been, will be, or is being committed." *Hensley v. Gassman*, 693 F.3d 681, 687–88 (6th Cir. 2012) (quoting *United States v. Deitz*, 577 F.3d 672, 687 (6th Cir. 2009)). A "seizure," requires "some meaningful interference with an individual's possessory interests in that property." *Id.* (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). And when a seizure is based on reasonable suspicion alone, it must be only "minimally intrusive." *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543–44 (6th Cir. 2002) (citing *United States v. Place*, 462 U.S. 696, 706 (1983)). This means McKnight must show either that 1) Cortez didn't reasonably suspect that McKnight's phone was connected with criminal activity or 2) even if reasonable suspicion supported the seizure, it was more than minimally intrusive—both in duration and scope. *See Place*, 562 U.S. at 709.

A thorny tangle of facts surrounds both of these questions. And those factual disputes prevent a judge from resolving either element on summary judgment.

As to reasonable suspicion, McKnight argues that Cortez has offered no evidence that "McKnight was doing anything to endanger the officers' safety" with his phone. McKnight MSJ at 19. He is right that neither side has pointed to any direct evidence that McKnight was using his phone for criminal or even risky purposes. What about circumstantial evidence? Cortez points to "the totality of the circumstances," by which he means McKnight's typing on his phone, Lamblin investigating a potential drug offense, and Cortez's "experience" with suspects using phones to rally others to the scene of an investigation, potentially jeopardizing officer safety or destroying evidence. Cortez Dep. at 21:3–4; 22:6–22; 23:16–25; 26:9; *see United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (officers may "draw on their own experience" in evaluating whether criminal activity is afoot) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). These, according to Cortez, justified the temporary seizure of McKnight's phone. Cortez knew of a narcotics investigation in which the suspect used his phone to contact his mother, who then arrived on the scene and removed "large amounts of evidence." Cortez Dep. at 32:6–22. Did this reasonably justify a belief that McKnight was using the phone in a way that would jeopardize the investigation, the officers' safety, or both? Was that in fact Cortez's reason for seizing the phone? Or was he out to deprive McKnight of his phone from the start, regardless of safety concerns?

The answers are not obvious and depend on careful examination of competing facts. Reasonable suspicion, though a "minimal" burden, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000), still requires *some* particularized reason to believe that the property seized is involved in illegal activity. And while it's easy to imagine a jury reasonably believing that Cortez's perception and experience gave him reasonable

9

suspicion, it's almost equally easy to imagine a jury disbelieving it. Close calls like this one are the sort that juries, not judges, get to make. *See, e.g., Green v. Throckmorton*, 681 F.3d 853, 863 (6th Cir. 2012) (existence of reasonable suspicion is a jury question when factually disputed in the civil context); *Mitchell v. Boelcke*, 440 F.3d 300, 303–04 (6th Cir. 2006) (same). Summary judgment is thus inappropriate.

Second, and assuming Cortez had reasonable suspicion to seize the phone, whether the seizure was "minimally intrusive" is a fact-bound inquiry. The factfinder must consider the length of the seizure and the surrounding circumstances in determining whether the seizure was "minimally intrusive" or exceeded the bounds of reasonableness that the Fourth Amendment establishes. *Cf. Emanuel v. Wayne County*, 652 F. App'x 417, 426 (6th Cir. 2016); *see, e.g., Six v. Beegle*, No. 2:11-cv-698, 2013 WL 5707245, at *8 (S.D. Ohio Oct. 18, 2023) ("whether the seizure of" personal property "was objectively reasonable under the circumstances of this case is a question for the jury to decide").

### F. Supervisory and Municipal Liability

Next, McKnight alleges supervisory and municipal liability against former Police Chief Sumner and the City of Hopkinsville for their failure to train and monitor officers, including Lamblin and Cortez. Complaint ¶¶ 49–52. Their "custom or policy of failing to provide officers such as Defendants Lamblin and Cortez with proper training," he contends, caused "retaliatory citations" and "baseless seizures" like the ones alleged in this case. *Id.* ¶ 50–51.

Neither Sumner nor the City is liable.

As to Sumner, a supervisor's personal liability for a failure to train and supervise requires "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley v. Lucas County*, 799 F.3d 530, 542 (6th Cir. 2015) (citations and emphasis omitted). McKnight must prove that Sumner "did more than play a passive role in the alleged violations." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *see also, e.g., Helphenstine v. Lewis County*, 60 F.4th 305, 321 (6th Cir. 2023) (no record evidence indicated that supervisor directed, authorized, or acquiesced in unconstitutional conduct).

Here, McKnight fails to carry the heavy burden of supporting a supervisory-liability claim: he's cited no record evidence that would allow a reasonable jury to find personal liability. No evidence before the Court indicates that Sumner directly participated in the traffic stop, knew about the stop in any way, or was directly

involved in the training (or alleged lack thereof) of Lamblin[6] or Cortez. To the contrary, Sumner points to unrebutted testimony that he was not. *See* Sumner Deposition (DN 21-9) at 9:9–16; 14:4–7. And Sumner testified that Lamblin and Cortez received training on the Department's policy regarding the public's right to record and photograph police officers. *See id.* at 14:11–20; *accord* Lamblin Dep. at 17:7–20:9; Cortez Dep. at 12:14–17. That policy, McKnight concedes, is constitutional. *See* McKnight MSJ at 21. So the Court grants summary judgment to Sumner with respect to McKnight's supervisory-liability claim because he points to no record evidence that would allow a jury to reasonably conclude that Sumner caused a constitutional violation by directing, authorizing, or knowingly acquiescing in his officers' unconstitutional conduct.

As to the City, McKnight's municipal-liability claim also fails.[7] To establish the City's liability, McKnight must demonstrate that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *See Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). McKnight fails to point to record evidence that would support a finding that the City was deliberately indifferent. So the Court grants summary judgment to the City on this claim.

A plaintiff can demonstrate a municipality's deliberate indifference in two ways. *First*, a plaintiff can show "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it." *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (quotation omitted). The Supreme Court has said this "is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011)

---

[6] As to Lamblin, of course, even evidence that his training was unconstitutionally inadequate wouldn't support supervisory liability against Sumner. That's because McKnight hasn't pointed to facts that would support a constitutional violation by Lamblin, as discussed above. *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 579 (6th Cir. 2020) (citation omitted) ("[A] plaintiff cannot establish a claim for supervisory liability without establishing an underlying constitutional violation by a supervised employee.").

[7] "It is important to note at the outset that a § 1983 *individual*-capacity claim differs from a § 1983 *official*-capacity claim. An official-capacity claim against a person is essentially a claim against the municipality. On the other hand, an individual-capacity claim seeks to hold an official personally liable for the wrong alleged. 'On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]' However, '[m]ore is required in an official-capacity action.... [T]he entity's 'policy or custom' must have played a part in the violation of federal law.'" *Peatross v. City of Memphis*, 818 F.3d 233, 240–41 (6th Cir. 2016) (citations omitted).

11

(quotation omitted). *Second*, the Supreme Court has not foreclosed, and the Sixth Circuit has accepted, the possibility that a plaintiff could provide "evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 836 (quotation omitted). The Supreme Court has observed that a plaintiff might show this in a "narrow range of circumstances." *Connick*, 563 U.S. at 63 (quotation omitted). And these circumstances, according to the Sixth Circuit, would involve a "complete failure to train the [officers], [or] training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Harvey v. Campbell County*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

As to the first approach, McKnight fails to identify a pattern of similar constitutional violations. His Complaint asserts, without specific supporting examples, that "other officers of … Hopkinsville's Police Department have issued similar retaliatory citations and made similar baseless seizures in the past." ¶ 51. McKnight doesn't carry his burden of showing "prior instances of unconstitutional conduct" demonstrating that the City's police training was deficient and likely to cause injury. No record evidence supports this theory. So McKnight fails to satisfy the first theory of deliberate indifference. *See Jackson*, 925 F.3d at 836; *see also* McKnight Opp. at 13 (relying instead on inadequate police training to support a showing of deliberate indifference). As to the second (theoretical) approach, McKnight hasn't pointed to evidence of any "complete" inadequacy in police training that would render "future police misconduct … almost inevitable [or] substantially certain." *Harvey*, 453 F. App'x at 567. To the contrary, the City points to evidence of the training that Lamblin, Cortez, and other Hopkinsville police officers receive related to constitutional law and Department policies and procedures. *See* Sumner Dep. at 9:19–11:13; *id.* at 15:19–16:20. So McKnight's claim fails for lack of record support with respect to the second theory of deliberate indifference as well.[8]

To the extent McKnight attempts to rely on vicarious liability to establish either Sumner's or the City's liability, *see* McKnight Opp. at 14, the law bars this approach. "The Constitution doesn't create vicarious liability, so any municipal liability must rest on a policy or custom the government adopted or ratified that caused the harm inflicted by its employees." *Boerste v. Ellis Towing, LLC*, 607 F. Supp. 3d 721, 745 (W.D. Ky. 2022) (citing *Connick*, 563 U.S. at 60–61).

---

[8] McKnight distorts Sumner's testimony to argue that Sumner ratified illegal, subjective policing standards, *see* McKnight Opp. at 13 (citing Sumner Dep. at 24:2–22)). Sumner admits no such violation. He remarked that officers rely on their training and perceptions to determine whether given action is legal. Sumner Dep. at 24:19–22.

12

### G.     Motion to Exclude

McKnight moves to exclude five "hybrid" witnesses that the Defendants have designated as both fact and expert witnesses: Lamblin, Cortez, and Sumner, as well as non-defendants Meeks and Newby. The first three, McKnight argues, should be excluded because they already intend to testify as fact witnesses, and allowing them to testify as their own experts would confuse the jury and prejudice McKnight. Motion to Exclude Experts at 2. And McKnight contends that all five proposed experts should be excluded because they intend to speak to legal conclusions in violation of the Federal Rules of Evidence. *Id.*

The Court denies this motion without prejudice. The Rules of Evidence recognize and (so long as appropriate precautions are taken) condone the use of hybrid fact and opinion testimony from the same witness: "If the district court and the prosecutor take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, then the officer's 'expert' testimony may be proper." *United States v. Tocco*, 200 F.3d 401, 418 (6th Cir. 2000) (citation omitted). And so it is here. Should the need arise, the Court is confident that the jury in this case—aided by the instructions and objections offered by competent counsel—could grasp the distinction between expert and fact testimony.

McKnight hasn't identified any reason grounded in precedent or fact to suppose the judge and jury couldn't understand a mix of fact and opinion testimony (properly qualified and grounded) from any of these witnesses. *Cf. id.* at 419 (testifying officer's "dual roles were emphasized to the jury by the fact that he testified at two different times" and "the district court instructed the jury, both before he gave his opinion and again in the jury charge, that it should consider [the officer's] dual roles in determining what weight, if any, to give [the] expert testimony"). Should McKnight identify a more specific concern, he may renew this motion at a pretrial conference or in response to a particular line of questioning at trial. Likewise, the Court and defense counsel are aware of the limits and risks of expert-witness testimony regarding legal standards and so-called "ultimate issues." *See* Response to Motion to Exclude Experts (DN 29) at 12–14. This is a matter regularly addressed at trial and the Court would of course entertain any question-specific objections or conduct a limited witness voir dire outside the jury's hearing if necessary. At this point, however, the Defendants disclaim any intention of offering the testimony that worries Plaintiff's counsel, so a ruling in limine would be premature and insufficiently particular to advance the parties' preparation of their cases.

## ORDER

The Court grants in part and denies in the Defendants' motion for summary judgment (DN 25), denies McKnight's motion for summary judgment (DN 21), and denies without prejudice McKnight's motion to exclude experts (DN 22).

Case 5:22-cv-00154-BJB-LLK   Document 35   Filed 03/28/25   Page 14 of 14 PageID #: 568