FILED
JAMES J. VILT, JR. - CLERK
JAN 14 2026
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**DAQUAVIAN MCKNIGHT**                                                **PLAINTIFF**

v.                                                                     5:22-cv-154-BJB

**ALEXANDER CORTEZ**                                                   **DEFENDANT**

## JURY INSTRUCTIONS

    Members of the jury, now I will instruct you about the law that you must follow in deciding this case. These instructions have three parts. First, we will discuss your duties and the general rules that apply in every civil case. Second, I will explain the legal elements, or questions, that must be determined to decide the claims in question. Then I will pause and you will hear closing arguments from the lawyers—but those do not bind you like the instructions from the judge. Third, and finally, I will talk to you about how this group, as a jury, will deliberate and decide this case.

## DUTIES OF THE JURY

    You have two main duties as a juror. The first is to decide what the facts are. You must make this decision based on the evidence that you saw and heard here in Court. Deciding what the facts are is your job—not mine. Nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

    Your second duty is to apply the law, as I explain it, to those facts that you found. Instructing you about the law is my job. And you are bound by the oath you took at the beginning of the trial to follow my instructions, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, as well as these instructions now. All of the instructions are important, and you should consider them together as a whole.

    The lawyers may have talked about the law during their arguments. But if what they said is different from what I say, you must follow what I say. What the judge says about the law controls.

    Please work hard to perform these duties carefully and fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. The law does not permit you to be governed by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as I give it

to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between parties of equal standing, of equal worth, and holding the same or similar stations in the community. All parties stand equal before the law and are to be treated as equals.

You are to consider only the evidence in the case. Unless I instruct you otherwise, the evidence in the case consists of the sworn testimony of the witnesses (regardless of who called the witness), all exhibits received in evidence (regardless of who may have produced them), and all facts and events that may have been admitted or stipulated to.

Statements and arguments by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.

Another part of your job as jurors is to decide how credible, or believable, each witness was. This is your job, not mine. It is up to you to decide if a witness's testimony was believable and how much weight you think it deserves. You are free to believe everything that a witness said, or only part of it, or none of it at all. But you should act reasonably and carefully in making these decisions. Use your common sense and your everyday experience in dealing with other people, and then decide what testimony you believe and how much weight you think it deserves. The weight of the evidence does not necessarily depend upon the number of witnesses who testify for either side.

As a reminder, the Plaintiff has the burden of proving his case against the Defendant by what is called a "preponderance of the evidence." That phrase does not, of course, require proof to an absolute certainty. Rather, it means that the Plaintiff must present evidence that, considered in light of all the facts, persuades you that what the Plaintiff claims is more likely to be true than it is to be not true. You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases, such as this one. So you should disregard it. The standard here is whether the evidence establishes that a fact is more likely true than false.

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is simply evidence, like the testimony of an eyewitness, which (if you believe it) would directly prove a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Circumstantial evidence, on the other hand, is evidence that tends to prove a fact indirectly. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could infer that it was raining. The law makes no distinction

between the weight that you should give to either direct or circumstantial evidence. It does not say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## RULES OF LAW

### I. First Amendment Retaliation

In the context of ongoing police activity, the First Amendment gives citizens the right to speak without being punished if the speech does not obstruct that police activity. In order to prove his claim, DaQuavian McKnight must establish by a preponderance of the evidence each of the following elements:

(1) That McKnight was engaged in protected speech.

Criticizing the police is protected conduct under the First Amendment. To be protected speech, a topic need not be gentle and acceptable to broad parts of the population. It may be controversial, unpopular, silly, or even foolish so long as it is intended to convey a message, but threats, fraudulent speech, and obscenity are not. Speech that obstructs ongoing police activity is not.

(2) That Cortez took an adverse action against him.

An adverse action is one that would deter a person of ordinary firmness from continuing to engage in the protected conduct under the First Amendment—meaning that the manner in which a defendant took a plaintiff's cellphone would deter a plaintiff of ordinary firmness from continuing to criticize the police.

(3) That Cortez's adverse action against McKnight was motivated at least in part by McKnight's protected speech.

This element centers on a defendant's motives. A defendant's conduct is an actual cause of a plaintiff's injuries only if the defendant would not have taken the plaintiff's cellphone but for that plaintiff criticizing the police. Even if you find that the plaintiff has met this burden, you must find in favor of the defendant if you find that the defendant would have taken the same action in the absence of the plaintiff criticizing the police.

If you find that McKnight has proven by a preponderance of the evidence each of these elements, your verdict will be for McKnight.

If, on the other hand, you find that McKnight has failed to prove any one of these things by a preponderance of the evidence as to Cortez, then you must decide for Cortez, and you will not consider the question of damages.

### II. Fourth Amendment Unreasonable Seizure

The Fourth Amendment protects against unreasonable seizures of property. In this context, a seizure involves a meaningful interference with an individual's possessory interests. As previously explained, DaQuavian McKnight

4

has the burden of proving that the act of Cortez deprived McKnight of particular rights under the United States Constitution. In this case, McKnight alleges Cortez deprived McKnight of rights under the Fourth Amendment to the Constitution when Cortez took McKnight's cellphone.

In order to prove Cortez deprived McKnight of this Fourth Amendment right, McKnight must prove the following elements by a preponderance of the evidence:

(1) Cortez seized McKnight's property.

A person "seizes" property when he controls or takes possession of it in a manner that meaningfully interferes with someone's right to possess the property.

(2) In seizing McKnight's property, Cortez acted intentionally.

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. It is not enough to prove that a defendant negligently or accidentally engaged in that action.

(3) That the seizure was unreasonable.

To violate the Fourth Amendment, the seizure must have been objectively unreasonable.

A seizure of an individual's property is reasonable, and therefore legal, if a police officer has a reasonable suspicion that an item is connected to a crime that has been, will be, or is being committed. In order to prove that an alleged seizure was unreasonable, a plaintiff must prove that an officer lacked reasonable suspicion to seize his phone or that the length or the scope of the seizure was excessive.

"Reasonable suspicion" is a particularized and objective basis for suspecting that an item was connected to criminal activity or that a crime has been, will be, or is being committed. Reasonable suspicion requires a minimal level of objective justification for the law-enforcement activity; that is, more than a mere hunch. If the specific, objective facts and the totality of the circumstances at the time of seizure, including a police officer's experience and specialized training, rise to the level of reasonable suspicion, then the seizure was permissible.

Only a "minimally intrusive" seizure may occur if an officer has only reasonable suspicion. In determining whether the alleged seizure was "minimally intrusive," you must consider the length and scope of the seizure and the surrounding circumstances. In determining whether the length or scope of

5

the seizure was reasonable, consider all of the circumstances, including: the intrusiveness of the alleged seizure, the methods an officer used, the restriction on a plaintiff's liberty, and the length of the seizure as well as whether the methods used were reasonable under the circumstances.

If you find that McKnight has proven by a preponderance of the evidence each of these elements, your verdict will be for McKnight.

If, on the other hand, you find that McKnight has failed to prove any one of these things by a preponderance of the evidence as to Cortez, then you must decide for Cortez, and you will not consider the question of damages.

### III.   Compensatory Damages

If you find in favor of McKnight, then you must determine the amount of money that will fairly compensate him for any injury that you find he sustained as a direct result of a constitutional violation by Cortez.

A plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of an injury, even if they are not easy to measure. You should consider the physical and mental and emotional pain and suffering, if any, that a plaintiff has experienced. No evidence of the dollar value of physical, mental, or emotional pain and suffering has been or needs to be introduced.

You are to determine an amount that will fairly compensate McKnight for any injury you find that he has sustained.

### IV.   Nominal Damages

If you find that Cortez violated McKnight's rights under either or both of the theories described above, but you find that McKnight's damages have no monetary value, then you must return a verdict for him in the nominal amount of one dollar.

### V.   Punitive Damages

If a jury finds in favor of a plaintiff in a case such as this one, it may—but is not required to—assess punitive damages against the relevant defendant. The purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to the defendant and others not to engage in similar conduct in the future.

A plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against a defendant. You may assess punitive damages

against a defendant only if you find that his conduct was malicious or taken in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, spite, or is done for the purpose of injuring the plaintiff. Conduct is in reckless disregard of a plaintiff's rights if, under the circumstances, the defendant simply did not care about the plaintiff's rights.

If you find that punitive damages are appropriate, then you must use sound reason in setting the amount of those damages. Any punitive damages should represent an amount sufficient to fulfill the purposes that I have described to you, but should not reflect bias, prejudice, or sympathy toward any party. In determining the amount of any punitive damages, you should consider the following factors:

- the reprehensibility of the Defendant's conduct;

- the impact of the Defendant's conduct on the Plaintiff;

- the relationship between the Plaintiff and the Defendant;

- the likelihood that the Defendant would repeat the conduct if an award of punitive damages is not made;

- the Defendant's financial condition; and

- the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered.

## JURY DELIBERATIONS

When you go back to the jury room, you will select one juror to act as your foreperson. The foreperson will preside over your deliberations and will serve as your spokesperson here in Court.

The court security officers will deliver copies of these instructions to you in the jury room. When you have reached a unanimous agreement, the foreperson should complete the attached verdict form, write the date, and sign the verdict form on behalf of the jury. You will then tell the court security officer and return with your verdict to the courtroom.

Some of you may have taken notes during the trial. Any juror may use notes to refresh his or her memory of evidence presented at trial, but you should not rely on the notes as definitive fact or as evidence. Juror notes do not necessarily carry any greater weight than memory. And a juror's memory unaided by notes is just as significant as a juror's memory that is not. Jurors should not be influenced by another juror's notes.

Once you start deliberating, talk about the case only with other members of the jury—not with the security officer, or me, or anyone else. If you have any questions or messages, you must write them down on a piece of paper, sign them, and give them to the security officer. He will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson. Do not ever write down or tell anyone outside the jury room how you stand on your votes. That should stay secret until you are finished.

It is your duty as jurors to consult with one another with a view to reaching an agreement, if you possibly can do so without going against your individual judgment. You must each decide this case for yourself, but only after you impartially consider the evidence with your fellow jurors. During your deliberations, if you become convinced your own view is wrong, do not hesitate to reexamine your views and change your opinion. But do not surrender your honest conviction regarding the weight or effect of the evidence solely because of the opinion of your fellow jurors, or merely so the group can finish and return a verdict.

Your verdict or answer to any question must be unanimous. All eight members of the jury must agree on every answer to the questions and on the verdict.

The verdict forms below have been prepared for your convenience. You will take these forms to the jury room and, when you have reached a verdict, fill it out according to the jury's decision. You will then tell the officer and return with your verdict to the courtroom. All eight of you must unanimously agree on the verdict.